

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ALB:FJN
F. #2018R01965

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 13, 2021

<u>By ECF</u>

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Lothar Maelzner
     <u>Criminal Docket No. 18-630 (MKB)</u>

Dear Chief Judge Brodie:

  The government respectfully submits this letter in advance of defendant Lothar Malezner's sentencing, which is scheduled for September 21, 2021 at 10 a.m. By way of background, on January 30, 2020, the defendant pled guilty before Your Honor, pursuant to a plea agreement (the "Plea Agreement") to Count Two of the above-captioned indictment (the "Indictment"), charging possession of child pornography, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2). For the reasons set forth below, the government respectfully requests that the Court impose a sentence within the Guidelines range contemplated by the parties in the Plea Agreement, that is, 51-63 months of imprisonment.

  The government notes that had it insisted that the defendant plead guilty or go to trial on Count One of the Indictment, which charged Transportation of Child Pornography, in violation of 18 U.S.C. § 2252(a)(1) and 2252(b)(1), the defendant would be facing a mandatory minimum sentence of 60 months' imprisonment.[1] As such, the defendant has already received a significant benefit. For the reasons set forth below, the Court should not grant the defendant any further benefit by sentencing him below the stipulated Guidelines range.

---

 [1] The government would have convicted the defendant of Count One at trial based on the defendant's act of transporting child pornography from Canada to the United States, as described herein.

I.      Facts

In August 2018, the Department of Homeland Security, Homeland Security Investigations ("HSI") received information from Company A, an online platform for exchanging Bitcoin, that the defendant had engaged in cryptocurrency transactions with StarSessions, which is a pornography website based in Ukraine that is known to sell child pornography.  Specifically, Company A provided information that the defendant made a payment of approximately $42.75 in Bitcoin to "Star Sessions" on October 22, 2017.  (PSR ¶ 5).

On September 26, 2018, at approximately 7:00 p.m., the defendant arrived at LaGuardia International Airport in Queens, New York ("LaGuardia"), aboard Air Canada flight 720 from Toronto, Canada.  (PSR ¶ 6).  HSI agents met the defendant at the top of the jetway as he disembarked from his flight.  The agents informed the defendant that he was subject to a border search of his electronic devices, that he was not being detained, and that he was free to leave.  When asked how many electronic devices he had, the defendant told the HSI agents that he was traveling with one laptop and a cellular telephone.  Id.  However, a search of the defendant's luggage revealed that Maelzner was, in fact, traveling with an iPhone, an iPad, two MacBook laptop computers, two My Passport hard drives, and four USB flash memory drives.  Id.

When questioned about the ownership of the MyPassport hard drives, the defendant was evasive and told the HSI agents that he had received them in Canada for work.  (PSR ¶ 7).  However, the defendant was unable to name who had given the hard drives to him or precisely where.  When the HSI agents challenged the defendant's evasive answers, the defendant admitted that the hard drives belonged to him.  Id.  The defendant then provided the passwords for his devices to the HSI agents, but the agents were unable to gain access with the passwords provided.  The HSI agents then asked the defendant to input the passwords himself.  While he did so, the HSI agents observed that the defendant was entering a different password than he had told the agents.  When asked why he was lying about the passwords, the defendant responded that he "didn't want to get in trouble."  The defendant then provided the actual passwords to the devices.  Id.

When agents questioned the defendant about his involvement with child exploitation, the defendant stated that the agents would find approximately 100 images of approximately 14-year-old girls on the MyPassport hard drives.  (PSR ¶ 9).  The defendant stated that he downloaded images from internet sites.[2]  The defendant stated that he started downloading child exploitative materials in or about 2014 because he was bored on a business trip to San Francisco and the images of underage girls interested him.  (PSR ¶ 9-10).  The defendant stated that he continued to download and maintain a collection since then.  Id.

---

[2]     Maelzner's telephone and iPad contained several digital currency applications that were likely used to pay for child pornography.

2

The defendant told the HSI agents that the last time he had downloaded child exploitative material was "yesterday," meaning September 25, 2018. The defendant explained that his preference was for girls 14-15 years old. The defendant stated that his collection did not include imagery he considered "hard-core," but he described videos of underage girls masturbating or "fingering" themselves. (PSR ¶ 11). The defendant also admitted that he attempted to engage the services of a 15-year-old prostitute while on a business trip in the Dominican Republic in 2016. (PSR ¶ 8). The HSI agents detained the defendant's electronic devices but permitted the defendant to leave LaGuardia out of custody.

The next day, on September 27, 2018, the defendant reported to his job at Company B in Manhattan. According to employees of Company B, the defendant attempted to destroy the data on his work computer and then left the office abruptly. A forensic analysis of the defendant's work computer did not reveal child pornography, likely because the defendant had successfully deleted files and reverted the computer to a prior state. (PSR ¶ 13).

A subsequent forensic examination of the defendant's electronic devices (excluding the deleted work computer) revealed 28,775 images, including videos, of females as young as 8 years old fully nude and in sexually suggestive positions. For example, some of the images and videos depict young girls performing stripteases and exhibiting their vaginal and anal regions. (PSR ¶ 15). The following are descriptions of some of the files on the defendant's electronic devices:

(a) A video that depicts a nude prepubescent female (approximately 6 to 8 years old) wearing makeup and high heels. An unidentified male instructs the prepubescent female on how to pose. Throughout the video, the prepubescent female is told to spread her legs and expose her vagina. (PSR ¶ 16).

(b) A video that depicts two nude females (one approximately 8 to 10 years old and the other approximately 12 to 14 years old) wearing makeup and high heels. An unidentified male instructs the two females on how to pose. Throughout the video, the females are told to spread their legs and expose their vaginas. Id.

(c) An image that depicts a nude prepubescent female (approximately 6 to 8 years old) squatting while exposing her vagina. Id.

On November 26, 2018, a grand jury sitting in the Eastern District of New York returned the Indictment, which charged the defendant with transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1) and 2252(b)(1), and possession of child pornography, in violation of in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). On January 30, 2020, the defendant pled guilty before the Court, pursuant to the Plea Agreement, to Count Two, possession of child pornography. Had the defendant plead guilty

to Count One, which charged transportation of child pornography, the defendant would be facing a five-year mandatory minimum sentence.[3]

II.     Guidelines Calculations

The United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") applicable to the defendant are correctly set forth in the PSR, and are restated below for convenience:

| | | |
|---|---|---:|
| | Base Offense Level (§ 2G2.2(a)(1)) | 18 |
| Plus: | Material Involving Minors Younger than 12 (§ 2G2.2(b)(2)) | +2 |
| Plus: | Offense Involved Use of a Computer (§ 2G2.2(b)(6)) | +2 |
| Plus: | Offense involved 600 Images or More (§ 2G2.2(b)(7)(D)) | +5 |
| Less: | Acceptance of Responsibility (§§ 3E1.1(a), (b)) | -3 |
| | Total Offense Level: | <u>24</u> |

The defendant has zero criminal history points and is therefore within Criminal History Category I. The corresponding Guidelines range is 51 to 63 months of imprisonment.

III.    Sentencing Analysis

As the Court is aware, under <u>United States v. Booker</u>, 543 U.S. 220, 245 (2005), the Guidelines are advisory and not mandatory. The Supreme Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but that they also may tailor the sentence in light of other statutory concerns. <u>Booker</u>, 543 U.S. at 220; <u>see</u> 18 U.S.C. § 3553(a). "[S]entencing judges remain under a duty with respect to the Guidelines . . . to consider them, along with the other factors listed in section 3553(a)." <u>United States v. Crosby</u>, 397 F.3d 103, 111 (2d Cir. 2005).

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial

---

[3]     Title 18, United States Code, Sections 2252(a)(1) and 2252(b)(1) provide that "any person who knowingly transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mails, any visual depiction, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct . . . shall be fined under this title and imprisoned not less than 5 years. . . ."

4

benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party"; the Court "may not presume that the Guidelines range is reasonable" and "must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

       Section 3553(a) requires a court to consider a number of factors in imposing sentence, including the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the violation, to promote respect for the law, and to provide a just punishment for the violation; and the need for the sentence to afford adequate deterrence to criminal conduct; to protect the public from further crimes or violations of the defendant; and to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner. The court must also consider the kinds of sentences available, the applicable sentencing guideline and pertinent policy statements, and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553(a)(1)-(6).

       Applying the above principles to this case, the Court should impose a Guidelines sentence. The primary victims in child pornography offenses are the children depicted in the defendant's expansive child pornography collection. United States v. Shutic, 274 F.3d 1123, 1126 (7th Cir. 2001); United States v. Sherman, 268 F.3d 539, 547–48 (7th Cir. 2001). As the Sherman Court noted, "child pornography directly victimizes the children portrayed by violating their right to privacy," Sherman, 268 F.3d at 547, and "children . . . suffer profound emotional repercussions from a fear of exposure[] and the tension of keeping the abuse a secret[.]" Shutic, 274 F.3d at 1126 (citations omitted). Even a "passive consumer who merely receives or possesses the images directly contributes to this continuing victimization." Sherman, 268 F.2d at 545 (citations and marks omitted). "Indeed, one of the reasons for criminalizing the 'mere' possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted." Id. at 547. Adequate punishment, respect for the law and just punishment all call for a serious sentence of imprisonment. See 18 U.S.C. § 3553(a)(2). A below-Guidelines sentence would send the message that collectors of such extreme child pornography can expect lenient treatment at the expense of children.

       In this case, the defendant possessed (and traveled with) multiple videos depicting—among other things—the sexual abuse of multiple prepubescent females by adult males. (PSR at ¶¶ 7, 11). The defendant's assertion that he should receive a non-custodial sentence because the child sexual abuse images he possessed were "mild' child pornography is shockingly dismissive and insensitive. See Def. Sentencing Memo at 2, 5. The defendant has admitted to committing one of the most reprehensible federal crimes, that is, the possession of images and video of children being sexually abused and degraded. Indeed, even "child pornography" is too sanitized a term to capture the horrific reality of these images as the word "pornography" suggests the depiction of consensual sexual acts. The reality is that these images and videos are prized by people like the defendant precisely because they depict sexual abuse inflicted on powerless children who could not and would

not have consented to what was done to them. "Child pornography" is nothing like adult pornography. It is crime scene evidence of the most vulnerable members of our society being sexually tortured for the perverse pleasure of deviants like the defendant. There is little doubt that the prepubescent children who were forced to dress up and expose their genitals do not consider their abuse to be "mild." Additionally, the defendant overlooks that the Guidelines range calculated in the PSR and Plea Agreement considers that the images possessed by the defendant do not involve masochistic or sado-masochistic conduct. Had the defendant possessed such images, his Guidelines range would be higher. See U.S.S.G. § 2G2.2(b)(4). As such, the Guidelines have appropriately considered the nature of the defendant's child sexual abuse collection.

        The premediated and methodical way in which the defendant amassed his collection of child sexual abuse images also suggests that a Guidelines sentence is appropriate. The defendant did not commit the offense on a whim. To the contrary, the defendant methodically amassed his child sexual abuse collection over a multi-year period, using his IT skills to evade detection. For example, the defendant used—among other things—the dark web, the TOR browser, cryptocurrency, and a VPN connection to attempt to hide his illegal conduct. The defendant even went so far as to forensically alter his work computer so that he could download images of child sexual abuse more quickly without his employer finding out. The 28,775 images found on the defendant's electronic devices show that the defendant had an insatiable desire to acquire and possess images of children being sexually abused.[4] The defendant also admitted to attempting to procure the services of at least one underage prostitute to satiate his sexual appetite for children.

        The defendant's actions upon being confronted with his crimes also suggests the propriety of a significant custodial sentence. Rather than be truthful or invoke his right to remain silent, the defendant chose to engage in a series of deceptive acts to try to hide his criminal conduct. First, he lied to the HSI agents about how many electronic devices were in his possession. (PSR ¶ 7). Next, he attempted to deceive the agents by providing them with false passwords for the devices. Id. Next, the defendant lied to the agents about the scope of his child sexual abuse collection by telling the agents they would find approximately 100 images of teenage girls. Id. at ¶ 11. The next day, having slept on the day's prior events, the defendant went to his office and deleted the contents of his work computer—a computer that he now admits he used to download images of child sexual abuse. Id. at ¶ 13.

---

[4] The defendant claims that he only possessed a 28,775-image collection of child sexual abuse because he was forced to download large files to obtain the select images of child abuse that he wanted. This purported justification rings hollow for, among other reasons, the simple fact that no one forced the defendant to download *any* image of child sexual abuse. Additionally, the defendant was an IT professional who could have easily deleted unwanted images. For example, the defendant was able to quickly delete data from his work computer when it suited his needs. (PSR ¶ 13). The simple fact is that 28,775 images of child sexual abuse were on the defendant's electronic devices because he chose to download them and keep them there.

The history and characteristics of the defendant further confirm that a sentence within the Guidelines range is appropriate. The defendant's personal characteristics do not place him outside the considerations already set forth in the Guidelines. He appears to have had a supportive family upbringing. He was close with both parents, and remains close with his wife, mother, and siblings. Until the instant offense, he appears to have been gainfully employed. Put simply, the defendant is not that dissimilar from many defendants who possess child sexual abuse images, and therefore should not be sentenced dissimilarly.[5]

The defendant's claim that he should be given a reduced jail sentence because he has been on home confinement since his arrest is unavailing. The defendant plead guilty on January 30, 2020 to Count Two of the Indictment and the Court scheduled sentencing for July 8, 2020. Since then, the defendant made six requests to adjourn the sentencing date. See ECF Nos. 37, 40, 42, 44, 45, and 46. Each time the defendant requested an adjournment of the sentencing date, he effectively lengthened the period of his home confinement. The defendant should not now be permitted to have it both ways by claiming that his self-lengthened period of home confinement weighs in favor of a lesser period of incarceration.

The defendant has also expressed little remorse for the victims of his crime. Rather, the main thrust of the defendant's sentencing submission and exhibits is that the defendant is, in fact, the victim. Most of the defendant's sentencing materials address the hardships that the defendant has allegedly had to endure and speak just a few, cursory words about the true victims in this case. The reality is that the continued distribution of, and possession of, images and videos like those in the defendant's collection continues to cause great harm to the victims featured therein. These victims are innocent children, and later adults, who live the rest of their lives knowing that the digital record of their abuse will continue to be traded among the depraved for their sexual gratification. A significant sentence within the Guidelines range is needed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. 3553(a)(2)(A).

IV. Conclusion

The seriousness of the underlying offense is evident on its face and calls for a significant prison sentence. See 18 U.S.C. § 3553(a)(1). Adequate punishment, deterrence and, most importantly, protection of children all call for a significant sentence. The

---

[5] The defendant oversells the impact of the psychological evaluations in this case. Dr. Jennifer McCarthy from the New York Mental Health Group explicitly noted that the defendant was "less than forthcoming regarding his level of sexual arousal" to child sexual abuse images. Def. Sentencing Ex. E at 12. Likewise, Dr. McCarthy found that the defendant "was less than forthcoming regarding his frequency of sexual fantasies" about child sexual abuse images. Id. at 13. Indeed, Dr. McCarthy explicitly noted that the defendant needs further "participation in sex offender specific treatment" in order to "further explore [the defendant's] involvement with child pornography." Id. at 16.

government therefore requests that the Court impose a sentence of 51-63 months of imprisonment.

                Respectfully submitted,

                JACQUELYN M. KASULIS
                Acting United States Attorney

By:   /s/ Francisco J. Navarro
        Francisco J. Navarro
        Assistant United States Attorney
        (718) 254-6007

cc:    Clerk of the Court (MKB) (by ECF)
       Florian Miedel, Esq. (by ECF and email)
       Angelica Deniz, United States Probation Officer (by email)